| Attorney or Party Name, Address, Telephone and FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Andy C. Warshaw**<br>**1200 Main St., Suite C**<br>**Irvine, CA 92614**<br>**714-442-3319 Fax: 714-361-5380**<br>California State Bar Number: **263880 CA**<br>**awarshaw@bwlawcenter.com** | |

☐ *Individual appearing without attorney*
☑ *Attorney for:* __Debtor__

## UNITED STATES BANKRUPTCY COURT
### Central District of California

| In re | CASE NO.: **2:19-bk-17539-NB** |
|---|---|
| | CHAPTER **13** |
| **Florenzia Vineyard** | **DEBTOR'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY UNDER LBR 3015-1(p)** |
| Debtor(s). | [No Hearing Required] |

Debtor moves this Court for an order authorizing the debtor to sell the real property, described below, pursuant to the terms and conditions described herein.

1.  Debtor's Chapter 13 Plan (Plan) was confirmed on: ___October 15, 2019___.

2.  Debtor wishes to sell the real property (Property) located at:
    ___3345 Sante Fe Ave. #100___
    ___Long Beach, CA  90810___

    The Property is more particularly described in Exhibit "A" attached hereto.

    ☐ Debtor wishes to modify the Plan for early payment of the Plan as described in the *Motion to Modify Plan* submitted by Debtor concurrently with this Motion.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                                              **F 3015-1.16.MOTION.SELL.RP**

3.  The sale price of the Property is $ __$409,000__ . The following are all of the encumbrances of record against the Property:
    a.  Rushmore Loan Management Services for $167,262.15
    b.  County Taxes for $10,000
    c.  _____
    d.  _____
    e.  _____
        *(Add additional page if necessary)*

4.  After payment of the foregoing encumbrances and all costs of sale:
    ☑ there will remain the approximate sum of $ __205,632.97.__
    ☐ no proceeds will remain.

5.  ☑ (a) The chapter 13 trustee is hereby authorized to make demand upon escrow for sufficient funds to
       pay off the Plan with a:
       ☑ 100% dividend to unsecured creditors; OR
       ☐ ____% dividend as indicated in the confirmed plan.
    After escrow's payment of the encumbrances listed above, any remaining funds shall be paid directly to debtor.
    **OR**
    ☐ (b)   The chapter 13 trustee is hereby authorized to make demand upon escrow for the balance remaining after
       escrow's payment of the encumbrances listed above even though the amount is insufficient to pay off the
       Plan. The sale is for the fair market value of the Property.

6.  The escrow is being processed by:
    Escrow company name:      **Arbor One Escrow**
    Address:                             8667 Haven Avenue, Suite 100
                                              Rancho Cucamonga, CA 91730
    Telephone:                        909-303-2820
    Facsimile:                          909-303-2802
    Escrow officer:                  Veronica Baiz
    Escrow number:               555564-M3

7.  Supporting documents attached to this Motion are:
    a. Exhibit A – Legal description with street address
    b. Exhibit B – Escrow Instructions and Documents
    c. Exhibit C – Estimated Closing Statement
    d. Exhibit D – Schedules I and J of the bankruptcy petition

    **\*\*\*LBR 3015(w)((1)(C) provides, in part, that, "notice is not required if the sale or refinance will pay off the
    plan and the plan allows 100% to the unsecured claims"  The Debtor's motion to sell here provides for the
    payment of creditors in full; the Debtor submits that no additional notice is required.**

9.  Debtor agrees to provide to chapter 13 trustee a certified copy of the escrow closing statement within 14 days of the
    close of escrow as a condition to any approval of this motion.

Date:   __February 24, 2023__                              __/s/ Andy C. Warshaw__
                                                                              Attorney for Debtor(s)

I declare under penalty of perjury that the foregoing is true and correct.

Date:   __February 24, 2023__                              _____
                                                                              Debtor

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

3.  The sale price of the Property is $ __$409,000__ . The following are all of the encumbrances of record against the Property:
    a.  Rushmore Loan Management Services for $167,262.15
    b.  County Taxes for $10,000
    c.
    d.
    e.  _____
        *(Add additional page if necessary)*

4.  After payment of the foregoing encumbrances and all costs of sale:
    [✓] there will remain the approximate sum of $ _205,632.97._
    [ ] no proceeds will remain.

5.  [✓] (a) The chapter 13 trustee is hereby authorized to make demand upon escrow for sufficient funds to pay off the Plan with a:
        [✓] 100% dividend to unsecured creditors; OR
        [ ] _____% dividend as indicated in the confirmed plan.
    After escrow's payment of the encumbrances listed above, any remaining funds shall be paid directly to debtor.
    **OR**
    [ ] (b)   The chapter 13 trustee is hereby authorized to make demand upon escrow for the balance remaining after escrow's payment of the encumbrances listed above even though the amount is insufficient to pay off the Plan. The sale is for the fair market value of the Property.

6.  The escrow is being processed by:
    | | |
    |---|---|
    | Escrow company name: | **Arbor One Escrow** |
    | Address: | 8667 Haven Avenue, Suite 100 |
    | | Rancho Cucamonga, CA 91730 |
    | Telephone: | 909-303-2820 |
    | Facsimile: | 909-303-2802 |
    | Escrow officer: | Veronica Baiz |
    | Escrow number: | 555564-M3 |

7.  Supporting documents attached to this Motion are:
    a. Exhibit A – Legal description with street address
    b. Exhibit B – Escrow Instructions and Documents
    c. Exhibit C – Estimated Closing Statement
    d. Exhibit D – Schedules I and J of the bankruptcy petition

    ***LBR 3015(w)((1)(C) provides, in part, that, "notice is not required if the sale or refinance will pay off the plan and the plan allows 100% to the unsecured claims" The Debtor's motion to sell here provides for the payment of creditors in full; the Debtor submits that no additional notice is required.**

9.  Debtor agrees to provide to chapter 13 trustee a certified copy of the escrow closing statement within 14 days of the close of escrow as a condition to any approval of this motion.

Date:  February 24, 2023                         /s/ Andy C. Warshaw
                                                 Attorney for Debtor(s)

I declare under penalty of perjury that the foregoing is true and correct.

Date:  February 24, 2023

                                        Debtor

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                                        **F 3015-1.16.MOTION.SELL.RP**

**Exhibit A – Legal description with street address**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                                      **F 3015-1.16.MOTION.SELL.RP**

**Exhibit "A"**

**Legal Description**

A.P.N.: █████████

Real property in the City of LONG BEACH, County of LOS ANGELES, State of California, described as follows:

A CONDOMINIUM COMPRISED OF:

A) AN UNDIVIDED 1/156 INTEREST IN AND TO LOT 1 OF TRACT NO. 32270, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 870, PAGE(S) 30 TO 37 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM UNITS 2 TO 157 INCLUSIVE AS DEFINED AND DELINEATED ON A CONDOMINIUM PLAN RECORDED NOVEMBER 18, 1976 AS INSTRUMENT NO. 4142.

B) UNIT 100 AS DEFINED AND DELINEATED ON THE ABOVE REFERRED TO CONDOMINIUM PLAN.



**Exhibit B – Escrow Instructions and Documents**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.



8667 Haven Avenue, Ste. 100  Rancho Cucamonga, CA 91730
Phone:  (909) 303-2820  Fax:  (909) 303-2802

**ARBOR ONE ESCROW, INC. IS LICENSED BY THE DEPARTMENT OF FINANCIAL PROTECTION AND
INNOVATION OF THE STATE OF CALIFORNIA, LICENSE NUMBER 96DBO-49450**

**ADDENDUM TO CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT  ESCROW INSTRUCTIONS
DATED January 15, 2023**

Veronica Baiz                                                    **Escrow No.:**  555564-M3
Escrow Officer                                                  **Date:**  January 20, 2023

We, the undersigned, hand you a copy of the California Residential Purchase Agreement and Joint Escrow Instructions
dated January 15, 2023, Counter Offer No. Seller Counter Offer 1 dated January 19, 2023 and Addendums (original(s) of
which has/have been executed by all parties and retained by broker).  Your duties and responsibilities are limited to those
paragraphs specified  in paragraph  19, "JOINT ESCROW INSTRUCTIONS  TO ESCROW HOLDER", deleting  as a
covered mutual instruction paragraph 14G and adding paragraph 14H as a mutual instruction of Buyer and Seller to
Escrow Holder.

| | |
|---|---:|
| Buyer has handed ARBOR ONE ESCROW, INC. | |
| initial deposit in the amount of | 4,000.00 |
| Prior to close of escrow, buyer will deposit an additional amount of | 14,175.00 |
| Buyer herein to obtain a new first trust deed FHA loan in the amount of | $390,825.00 |

| | |
|---|---:|
| **Total Consideration** | **$409,000.00** |

I/We will deliver to you any instruments which this escrow requires, fully executed, all of which you are instructed to use
provided that on or before **February 21, 2023** you hold a policy of title insurance issued by **Lawyers Title Company** with
a liability of **$409,000.00** covering property:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF

**SELLER STATES THAT THE PROPERTY ADDRESS IS:** 3345 Santa Fe Avenue, #100, Long Beach, CA 90810

**TITLE POLICY TO SHOW TITLE VESTED IN:** Talon Stradley and Rhiannon White, Complete Vesting to Follow

**Buyer(s) complete vesting is to be provided to Escrow Holder, and Escrow Holder is authorized and instructed to
insert Buyers vesting on the Grant Deed, over signatures of Grantor's thereon**

**The owner(s) of Studio Escrow, Inc., Beverly & Company, Inc., Realty Masters & Associates, Inc., Chaysee LLC,
Core Equity Properties  LLC, Flat Fee Group,  Inc. (dba) Smart Realty Group,  Inc., MM Group Holdings,  Inc.,
Secured Income Group, Inc., Snap Referral, Inc., Deal Funder, Inc.,  My Mountain Mover, Inc. and Instant NHD,
Inc. are also the owner(s) of escrow holder and may act or are acting as broker, broker associate, or sales agents
in connection with in escrow transactions.**

**FREE FROM ENCUMBRANCES EXCEPT:**

(1)      General and special Taxes for the fiscal year  , including bonds, special assessments, assessed against former
         owner, and/or supplemental  taxes assessed pursuant to the provisions of Chapter 498, Statutes of the State of
         California.  (Change of Ownership will affect the taxes to be paid.  A Supplemental Tax Bill will be issued and
         BUYER accepts all responsibility for all additional taxes due because of said reassessment.  TAX BILLS ISSUED
         AFTER THE CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYERS AND SELLERS.)

(2)      Covenants, conditions, restrictions, reservations, rights, rights of way, and easements, and any oil, gas, or mineral
         reservations now of record, if any.

(3)      First Deed of Trust to record securing a note in the amount of $390,825.00 (new FHA loan).

**INSTRUCTIONS**

A.      **ALLOCATION OF COSTS:**  Unless otherwise specified in writing, this paragraph only determines who is to pay
        for the inspection,  test or service ("Report") mentioned:   it does not determine  who is to pay for any work
        recommended or identified in the Report.
        1.      **INSPECTIONS AND REPORTS:**
                **Seller** shall pay for a natural hazard zone disclosure report with environmental prepared by MyNHD.
        2.      **GOVERNMENT REQUIREMENTS AND RETROFIT:**

(CONTINUED)

Seller's Initials:  _____/_____                                    Buyer's Initials:  _____/_____

Date:  January 20, 2023                                                      Escrow No.:  555564-M3

Page 2 of 10:  Additional instructions made a  part of previous pages as fully incorporated therein.

**Seller** shall pay for smoke detector installation and/or water heater bracing, if required by Law.  Prior to Close of Escrow, Seller shall provide Buyer written statement(s) of compliance in accordance with state and local law, unless exempt.

**Seller** shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law.

3.    **ESCROW AND TITLE:**

**Seller and Buyer** shall pay escrow fee.  Each their own.  Escrow Holder shall be Arbor One Escrow, Inc..  **Seller** shall  pay for owner's title insurance policy .  Owner's title policy to be issued by Lawyers Title Company.  (Buyer shall pay for any title insurance insuring Buyer's lender, unless otherwise agreed in writing.)

4.    **OTHER COSTS:**

**Seller** shall pay County transfer tax or fee.

**Seller** shall pay City transfer tax or fee.

**Seller** shall pay Homeowner's Association ("HOA") transfer fee.

**Seller** shall pay HOA document preparation fees.

**Seller** shall pay for any private transfer fee.

**Seller** shall pay the cost, not to exceed $550.00,  of a one-year home warranty plan, issued by First American Home Warranty, with the following optional coverages: Eagle Premier Plan.  Buyer is informed that home warranty  plans have many optional coverages in addition  to those listed above.  Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.  Should the cost of the policy exceed said amount, Escrow holder is instructed to charge the remaining balance to Buyer's account with no further written instruction.

B.    **FINANCE:**  This escrow is subject to and contingent upon Buyer and property qualifying for and obtaining a new FHA First Trust Deed.  First Deed of Trust to record, and note secured thereby in the amount of $390,825.00 in favor of lender of Buyer's choice as per their terms, to be obtained by Buyer at Buyer's expense.  Escrow Holder is authorized and instructed to charge Buyer's account with all costs incurred on Buyers' behalf allowable by FHA to be paid by Buyer, including but not limited to, loan origination fees, credit report, appraisal, recording fees, inspections fee and endorsement to title policy in the maximum amounts allowable.  Escrow Holder is authorized and instructed to charge Seller's account  with all costs incurred  on Sellers' behalf  and  all costs incurred  on Buyers' behalf that are not allowable by FHA to be paid by Buyer, including but not limited to, fees for documents, photos, inspection, warehouse or differential fees, if any, tax service, owners policy of title insurance, sub-escrow fees, documentary transfer tax, Seller's escrow fee,  and the balance of buyer's fees  not allowable by FHA  for Buyer to pay.  Escrow Holder is authorized and instructed to charge Seller's account with the lender's discount fee, not to exceed  point(s).  Buyer's execution of loan documents shall constitute Buyers approval of the terms and conditions of said new loan and Escrow Holders authorization to comply with lender's requirements.

C.    **AS-IS CONDITION:**  The undersigned buyer has inspected the subject property and is purchasing the same based upon that inspection and is not in reliance on any representation, implied or stated, of the seller or any selling agent for broker.  Buyer understands that this sale is made without representation, warranty or covenant of any kind, expressed or implies, and that buyer is purchasing the subject property in its "AS IS" condition with the exception of the termite report as set forth herein.

D.    **SELLER CREDIT TOWARDS BUYER'S RECURRING AND NON-RECURRING CLOSING COSTS:**  Seller agrees to CREDIT Buyer(s) an amount not to exceed **$10,000.00**, to be applied towards Buyers recurring and non-recurring closing costs.  Escrow Holder is authorized and instructed to **DEBIT Seller** and **CREDIT Buyer** at the close of escrow.  Any recurring and non-recurring closing costs in excess of **$10,000.00**, are to be paid by the Buyer herein. If the Buyer's Recurring and Non-Recurring closing costs are less than said amount above, then the Seller will credit only the actual amount of the Recurring and Non-Recurring closing cost.

E.    **SELLER CONTINGENCY:** The closing of this escrow is contingent upon Seller's purchase of another property of Seller's choice. Written notification deposited with escrow holder from Seller, shall be deemed removal of this contingency. All parties agree that the close of escrow shall be contingent and concurrent within one business day of Seller's purchase escrow.

F.    **HOMEOWNERS ASSOCIATION INFORMATION:**  Buyer herein is aware that the subject property is affected by a  **HOMEOWNER'S ASSOCIATION**  in which membership  is required.  Monthly association dues  are owed  per month. Escrow Holder is authorized  and instructed  to obtain Statement(s) of Account and transfer instructions from  said association  and/or Management  company and  to comply with their transfer requirements.  It is imperative that Seller herein provide necessary information  to Escrow Holder  for immediate handling  of said requirements,  as any delay may affect  the closing  of this transaction.  Furthermore, buyer(s)  and seller(s)  are hereby made aware that there may be "UPFRONT FEES" for required documentation and/or demand information. With said documentation  in Escrow's possession, Escrow Holder  will charge Seller(s) account  with any outstanding balance  to bring account current. Furthermore, Seller herein will pay the required "Transfer Fee"  at the close of escrow

G.    **HOMEOWNERS ASSOCIATION DOCUMENTS:**  Seller(s) herein will furnish Buyer(s) current copies of the Covenants, Conditions and Restrictions (known as CC&R's), Articles of Incorporation, By-Laws and current budget for said homeowner association,  It is Buyer's) responsibility to make sure this condition is met prior to close of escrow. Seller is responsible for forwarding any association keys/tags/identification and/or access cards to Buyer(s) herein at close of escrow.

H.    **DEMANDS, LIENS AND APPLICATION  OF PAYOFF FUNDS:**  Escrow holder is authorized  to: 1) Order demands for, and pay at the close of escrow, any encumbrances of record necessary to place title in the condition

(CONTINUED)

Seller's Initials:  _____/_____                                      Buyer's Initials:  _____/_____

Page  3 of 10:  Additional instructions made a  part of previous pages as fully incorporated therein.

called for.  2) Request any City, County liens on title and is authorized to pay upfront fees if required. Escrow holder is hereby authorized to use buyer's earnest money deposit, to pay for upfront fees required by the city or county to obtain demand. Should escrow cancel Seller agrees to refund buyer for any upfront fees paid from buyer's earnest money deposit.  3) Request the lender of any revolving line or equity line of credit to immediately close said account. 4) To charge interest through the date funds are to be received by the existing lien holders pursuant to their demand. Should a check or wire be deemed unacceptable by lenders, creditors, lien holders or beneficiaries of Deeds of Trust, Escrow Holder is authorized to act on our behalf in requesting the funds, as well as any balance in an impound account, be applied towards the balance due.

I.      **CLOSING FUNDS:**  Each party acknowledges  that the close of escrow is conditioned  on check clearances. Funds to close must be in the form of a Cashier's Check drawn on a bank with clearing house in the State of California OR a wire transfer to ARBOR ONE ESCROW, INC. Trust Account, and be deposited at least (2) two business days prior to recording of documents.

J.      **1099 FORM:**  If required by law, the seller shall hand to Escrow Holder an IRS 1099 gross proceeds report, which you are to forward to the IRS in accordance with the law, and a copy thereof is to be delivered to the seller at the close of escrow.   This is NOT in lieu of any tax withholding  which may become applicable  under FIRPTA. ESCROW HOLDER IS AUTHORIZED AND INSTRUCTED TO INSERT BUYER'S PART OF REAL ESTATE TAX PAID, OVER THE SIGNATURE OF THE SELLER, ON SAID 1099, AT THE CLOSE OF ESCROW WITHOUT ANY LIABILITY ON THE PART OF ESCROW HOLDER FOR SO DOING.

K.      **IN THE EVENT** EITHER PARTY REQUESTS CANCELLATION OF THIS ESCROW AT ANY TIME, ALL PARTIES ARE AWARE THAT THIS ESCROW WILL NOT BE CONSIDERED CANCELLED, AND NO FUNDS WILL BE DISBURSED UNTIL ESCROW HOLDER HAS RECEIVED MUTUALLY SIGNED CANCELLATION INSTRUCTIONS FROM BUYERS AND SELLER.

L.      **PRORATIONS:**  Prorate as of Close of Escrow
•       Real Property taxes based on latest tax bill or on amount furnished by title company.
•       Homeowners Association dues.

*******************************************************

THESE ESCROW INSTRUCTIONS ARE NOT INTENDED TO SUPERSEDE THE REAL ESTATE PURCHASE CONTRACT AND RECEIPT FOR DEPOSIT, BUT TO CARRY OUT ITS TERMS AND CONDITIONS IN CONSUMMATING THE PURCHASE AND SALE, EXCEPT AS MAY BE AMENDED OR MODIFIED BY THE MUTUAL WRITTEN INSTRUCTIONS OF THE PARTIES.

IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW, SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.

(CONTINUED)

Seller's Initials: _____/_____          Buyer's Initials: _____/_____

Page 4 of 10:  Additional instructions made a  part of previous pages as fully incorporated therein.

## ARBOR ONE ESCROW, INC. GENERAL PROVISIONS

1.  **OPENING OF ESCROW:** Your duty as Escrow Holder does not commence and escrow shall not be deemed opened until you receive Escrow Instructions and these General Provisions signed by all parties. You shall sign Supplemental Escrow Instructions and these General Provisions in addition to any initial Escrow Instructions you may sign, which may or may not be a part of a purchase agreement. Until Escrow Holder receives mutually executed documents, either party may unilaterally revoke these Instructions by written request delivered to you and may withdraw any Instructions or documents previously handed to you by said party. If either party unilaterally revokes these instructions and there are funds on deposit in the escrow, Escrow Holder reserves the right to require additional instructions from the parties concerning the disbursement of said funds. The deposit of funds with you shall be subject to disbursement pursuant to written Escrow Instructions, which you shall jointly deliver if Escrow Instructions have been jointly signed.

2.  **ESCROW HOLDER'S DUTIES:** Escrow Holder is only to be concerned with the terms of any Purchase Agreement which may contain Joint Escrow Instructions as specifically directed to Escrow Holder and these additional Supplemental Escrow Instructions and any Amendments thereto as well as these General Provisions. You are not to be concerned with or liable for items designated as "Memoranda Items" in Supplemental Escrow Instructions. You are not responsible for interpreting or acting on any provision of the Purchase Agreement which may contain Joint Escrow Instructions which is not set forth in the specified paragraphs directed to Escrow Holder. Your duties hereunder shall be limited to the safekeeping of such money and documents received as Escrow Holder and for the disposition of them in accordance with the written instructions accepted by you in this escrow. Escrow Holder shall not be liable for any damages, losses, costs or expenses incurred by any party in the handling and processing of escrow as a result of any act or failure to act made or omitted in good faith or for any action taken that Escrow Holder shall in good faith believe to be genuine. Escrow Holder may consult with legal counsel during the course of this escrow and Escrow Holder shall be protected in any act taken in good faith based upon advice of counsel.

3.  **LIMITATIONS ON DUTIES OF ESCROW HOLDER** : Escrow Holder shall not be responsible in any way whatsoever for (A) the sufficiency, validity or correctness of the signature of any party or any third party to this escrow, (B) the sufficiency or correctness as to form, manner of execution or validity of any documents deposited in this escrow, (C) the identity, authority or right of any person executing the same, either as to documents of record or those handled in this escrow, or (D) the failure of any party to comply with any of the provisions of any agreement, contact or other instrument filed or deposited in this escrow or referred to in these Escrow Instructions. The duties of Escrow Holder are limited to the safekeeping of money and documents received by it as Escrow Holder and for disposition in compliance with the written instructions accepted by you in this escrow. Escrow Holder shall not be required to take any action regarding the collection, maturity, or apparent illegality of any obligations deposited to you. The parties' signatures on all Escrow Instructions and documents for this escrow indicate their unconditional acceptance and approval of same. If the parties or lender(s) desire that Escrow Holder verify any signature(s) on instructions, check, loan documents or other items received by it, a separate written Escrow Instructions must be entered into and expressly approved by Escrow Holder that specifically evidences Escrow Holder's agreement to undertake such responsibility upon the payment of an additional fee. Escrow Holder shall not be liable or responsible for any loss that may occur because of forgeries, fraud or false representations made or involving the principals to this escrow, any third parties, the principals' agent(s) or broker(s) or any other person or entity.

4.  **WRITTEN INSTRUCTIONS**: All notices, demands and Instructions must be in writing. Escrow Holder shall have no duty to verify the signature of any party unless further written Escrow Instructions to do so are received by you together with an agreement to pay additional escrow fees. No notice, demand, instruction, amendment, or supplement of these Escrow Instructions shall be of any effect in this escrow until deposited in writing and mutually executed by all parties. You are authorized to accept oral instructions from these parties, real estate broker(s), real estate sales agent(s), mortgage company(s) or lender(s) concerning the preparation of Escrow Instructions, Amendments or Supplements. However, you are not to act upon any instruction so delivered until you have received same in writing signed by all parties to this escrow. Any documents, Supplemental Escrow Instructions and/or Amendments that may be necessary to complete this transaction may be executed in counterpart, each of which shall be deemed an original, regardless of the date of execution and delivery. All such counterparts together shall constitute the same document. Signatures on any documents and instructions or the performance of any act "outside of escrow", Escrow Holder shall have no responsibility for, shall not be concerned therewith, and are specifically relieved of any obligation or liability relative thereto.

5.  **DELIVERY OF COPIES OF DOCUMENTS:** You are authorized to furnish copies of any Purchase Agreement which may contain Joint Escrow Instructions, Escrow Instructions, Supplemental Escrow Instructions or Amendments, General Provisions, Closing Statement, Preliminary Closing Statement, Preliminary Title Report, Notice of Cancellation, if any , or any other document Escrow Holder may have in its possession to the Real Estate Broker(s), Real Estate Agent(s), Attorney(s), Lender(s), and/or Lender's Agent(s) involved in this transaction. Copies of such documents shall be furnished to any other entity only upon the parties' oral or written consent. Escrow Holder may require a written request from the party or parties to furnish the aforesaid copies at its sole discretion. Escrow Holder is authorized to supply copies of documents as required to comply with Court Orders, Demands of governmental agencies, Subpoenas or other legal notice when such Orders or demands are submitted to Escrow Holder in their proper form. In this event, you are authorized to comply with requests without notification to either party in this escrow, and you shall not incur any liability for so doing. Delivery of any report, disclosure and/or information to the parties' real estate broker(s) or real estate sales agent(s) shall constitute delivery of same to that principal.

6.  **CLOSE OF ESCROW AND PRORATIONS:** All prorations and adjustments are to be made on the basis of a thirty-day month unless otherwise instructed in writing by all parties. The close of escrow with reference to prorations, adjustments and all purposes in this escrow shall by the day the instruments of conveyance are recorded with the County Recorder. For proration purposes, unless otherwise agreed upon by the parties, the Buyer will have ownership

(CONTINUED)

Seller's Initials:  _____/_____                                    Buyer's Initials:  _____/_____

Page  5 of 10:  Additional instructions made a  part of previous pages as fully incorporated therein.

of the real property which is the subject of this escrow for the entire close of escrow day, regardless of the hour of recording. If the date by which the parties' performances are due shall be other than Escrow Holder's regular business day, such performances shall be due on Escrow Holder's next succeeding business day.

7.  **DISBURSEMENT OF FUNDS AND DELIVERY OF DOCUMENTS:** All disbursements are to be made by the Escrow Holder's trust account check unless instructed otherwise in writing. Escrow Holder shall not indemnify and payee or guarantee signatures of any person or entity at any financial institution. Any funds disbursed during or at the close of escrow will be issued jointly to the parties designated as payee unless Escrow Holder is instructed otherwise in writing by all designated payees. The funds representing loan and/or sale proceeds will be disbursed jointly to all persons who were the record owners of the subject real property. All disbursements of funds and/or delivery of other documents or instruments concerning  this escrow will be mailed  to the entitled  party by regular first-class mail, postage prepaid, at the parties' respective address shown on file. However, at your discretion, you may send funds and/or other instruments or documents by certified or registered mail, overnight delivery, bank wire, messenger or facsimile machine, in which case the party for whom the delivery was made agrees to pay the costs, including, but not limited to, all bank wire charges. The provisions of this paragraph include, but are not limited to requests for demand statements, requests for beneficiary statements,  requests for homeowners' association statements  or any other requests as you may deem necessary for the timely closing of this issuance of the required title insurance policy or closing of this escrow. You are  to instruct the County Recorder to mail recorded documents to the entitled party at such party's address on file in this escrow transaction.  You are to instruct the title company to mail the title policy(ies) to the Lender(s) or Buyer(s) as appropriate.

8.  **ASSIGNMENT OF PROCEEDS:** If a party unilaterally assigns or orders its proceeds from this escrow to be paid to a person or entity other than the original parties to this escrow, such assignment or order shall be subordinate to the expenses of this escrow and liens of record on the subject property. If there  are not sufficient proceeds at the close of escrow to pay such assignment or order, you are nevertheless directed to close this escrow. In such an event, you shall pay such assignment or order up to the net proceeds and are not to be concerned with the balance remaining unpaid, if any. Furthermore,  if there are insufficient  proceeds to pay fully the assignment  or if the assignment is revoked, Escrow Holder shall have no responsibility or liability for providing such information to the assignee.

9.  **PAYMENT OF EXPENSES AND FEES:** Unless otherwise agreed upon in writing, the parties, and each of them, shall pay on demand, whether or not this escrow closes, all expenses and charges incurred by Escrow Holder on their behalf. Escrow Holder is authorized to charge, and the parties agree to pay, additional escrow fees or extraordinary services not within the range or customary escrow processing, including an administrative fee for bank wiring charges for the party for whom the bank wire was processed, overnight mail, messenger service or other expedited delivery service. At the discretion of the Escrow Holder and without further instructions, the escrow fee may be reduced for one or both of the parties.

10.  **DEPOSIT OF FUNDS:** Escrow Holder is authorized and directed to deposit all funds received by it with any state or national bank in a trust account in the name of Escrow holder, without liability for the payment of interest.  The funds may be withdrawn by Escrow Holder and disbursed in accordance with the written instructions of the parties. All deposits made by personal check, cashier's check, certified check or official check are subject to clearance and payment by the financial institution on which drawn and will be identified as collected funds when Escrow Holder's financial institutions confirms the funds are available for disbursement. Escrow Holder does not accept money orders, cash, foreign currency or Automatic Clearing House transactions for deposit. If any check deposited is dishonored upon presentment for payment, Escrow Holder is authorized to notify all parties to the escrow, the real estate broker(s), real estate sales agent(s) and any other person or entity Escrow Holder deems necessary in its sole discretion. On any dishonored check, party presenting it shall reimburse Escrow Holder for all bank and other costs and expenses incurred by it.

11. **SUB-ESCROW AGENT:** If necessary, proper or convenient for the closing of this escrow, you are authorized to deposit any documents and/or funds handed you under this escrow, with any duly authorized sub-escrow agent, including, but not limited to any bank, trust company, title insurance company, underwritten title company, savings and loan association, or licensed escrow agent, subject to your order on or before close of escrow.

12. **FACSIMILE/E-MAIL:** In the event any party, real estate broker(s), real estate sales agent(s), mortgage company(s) or any lender(s) utilizes facsimile or electronically transmitted instructions, Escrow Holder may rely and act upon such instruction in the same manner as if original signed instructions were in Escrow Holder's possession. The original  of any signed document  which was transmitted  by facsimile  or e-mail  shall be forwarded  to Escrow Holder within 48 hours of transmission. Escrow Holder shall have no liability to any party for relying upon facsimile or e-mail instructions which were transmitted to Escrow Holder or for any information which was misinterpreted due to the poor quality of the transmission.  The parties each understand  and agree that when necessary to permit compliance with these escrow instructions, Escrow Holder may  rely on facsimile or e-mail transmitted instructions and/or demands.

13. **EXPIRATION DATE OF INSTRUCTIONS; DISBURSEMENT UNDER ORDER/JUDGMENT; AND CANCELLATION:** If the conditions of this escrow have not been complied with at the expiration date of the Purchase Agreement which may contain Joint Escrow Instructions and Supplemental Escrow Instructions or any Amendment thereto,  you are instructed to complete the conditions at the earliest possible time, unless the parties, or either of them, have made written demand upon you to stop any further proceedings and/or performance of this escrow. The parties, jointly and severally, agree that if this escrow cancels or is otherwise terminated and not closed, the parties shall pay any costs and expenses  which you have incurred  or have become obligated  for under these Escrow Instructions, which may include, but not be limited to attorney's fees, arbitration fees and costs, bank wire charges incurred for  any of the parties, messenger, delivery or other special handling fees, along with Escrow Holder's

(CONTINUED)

Seller's Initials: _____/_____                              Buyer's Initials:  _____/_____

Page 6 of 10:  Additional instructions made a  part of previous pages as fully incorporated therein.

normal and usual escrow fees for the services rendered. Said fees may be apportioned between Buyer and Seller in a manner which in Escrow Holder's sole discretion, it considers to be equitable which apportionment shall be binding and conclusive upon the parties. The parties agree that funds to cover such costs and expenses must be deposited in escrow before any cancellation or other termination of this escrow is effective.

Upon receipt of mutually executed cancellation instructions  or a final Order or Judgment  from a Court of competent jurisdiction, to which Escrow Holder is specifically ordered to disburse funds, Escrow Holder shall disburse the escrow funds and instruments in accordance with the Order or Judgment, and be held free and harmless from any liability of any kind for doing so.  In following such Order or Judgment, this escrow shall, without further notice, be considered terminated and cancelled.

Your Agency as Escrow Holder shall terminate six months following the date last set for close of escrow and shall be subject to earlier termination by receipt by you of mutually executed cancellation instructions. If this escrow was not closed or cancelled within the described six-month period, you shall have no further obligations as Escrow Holder except to disburse  funds and documents pursuant  to written Escrow Instructions and to interplead  or otherwise dispose of funds and documents  in accordance  with a validly  issued and validly  served order from a court or competent jurisdiction or as otherwise provided under the law.

14. **CLOSING FUNDS/GOOD FUNDS NOTICE**: Section 12413.1 of The California Insurance Code requires that any title company handling funds in an escrow or sub-escrow capacity wait a specified number of days after depositing funds before recording any documents and disbursing funds. Due to this title company requirement, Escrow Holder requires one of the following before recording will be authorized:

(A) If funds required to close escrow are less than $500,000.00, we will accept payment in the form of a Cashier's Check drawn on California Bank or Savings and Loan or wired funds payable to Escrow Holder.  Said funds must be deposited in escrow 24 hours prior to authorization of recordation with the title company. Funds received in a form other than as set forth may delay the closing of your escrow transaction a minimum of one-to-ten business days, due to the check clearance processing. Escrow Holder does not money orders, cash, foreign currency or ACH (Automatic Clearing House) transactions for deposit.

(B) If funds required  to close escrow are $500,000.00  or more,  said funds MUST  be wire transferred  to Escrow Holder.  In this event, Escrow Holder shall provide to the appropriate parties its wiring instructions.   Escrow Holder shall not authorize recording until (a) It receives written confirmation of collected funds on any checks deposited, or (b) It receives written confirmation from its bank that all funds are available for disbursement.
**NOTE: FUNDS TO BE WIRED OUT ON ANY TRANSACTION WILL BE WIRED OUT ON THE NEXT BUSINESS DAY AFTER RECEIVING WRITTEN CONFIRMATION FROM ESCROW HOLDER'S BANK THAT  ALL FUNDS ARE AVAILABLE FOR DISBURSEMENT.**

15. **PRELIMINARY CHANGE  OF OWNERSHIP FORM** : Pursuant  to Section 480.3 of the California Revenue  and Taxation Code, all deeds  and other documents  that reflect  a change in ownership  must be accompanied  by a Preliminary Change of Ownership Report to be completed by the transferee. If this report is not presented at the time of recording,  or is not completed  by transferee correctly,  an additional charge  of $20, as required  by law, will be charged to transferee. If a complete change of ownership form is not presented at time of recording, a form will be mailed directly  to transferee  after closing  by the assessor's office  for completion  outside of escrow. Transferee assumes  all liability  and responsibility  for delinquent  or incomplete filing  of the Report, including  payment for any penalties which may be assessed.

16. **SUPPLEMENTAL PROPERTY TAXES**: California  law, as amended  from time-to-time,  requires the County Assessor  to reappraise property values  upon change of ownership  as well as for City, County or other district improvements.  Such reappraisal  may result in an increase  to the property  tax liability  that reflects the difference between the former value and the newly assessed value. In the event of a reappraisal, one or more supplemental tax bills may be issued by the Assessor's office. Any supplemental tax bills which are reported to Escrow Holder shall be paid by Seller prior to the close of escrow. The parties acknowledge and agree that Escrow Holder is not responsible for tax bills issued after closing, regardless of the period of time for which they are assessed. The parties, and each of them, shall handle any such tax bills outside of escrow, and hereby hold Escrow Holder free and harmless from any and all claims regarding the property including, but not limited to, reassessments and supplemental taxes.

17. **FEDERAL AND STATE WITHHOLDING TAX REQUIREMENTS:**

**FEDERAL REQUIREMENTS:** The Foreign Investment in Real Property Tax (FIRPTA), Internal Revenue Code Section 1445 requires  that the Buyer of U.S. Real Property must,  unless an exemption applies,  deduct  and withhold from Seller's proceeds ten (10%) percent of the gross sales price for the Internal Revenue Service("IRS") unless:
(C) Seller provides Escrow Holder  with an Affidavit stating  the Seller  is not a foreign person as per the IRS definition or;
(D) Buyer provides Escrow Holder with an Affidavit stating the sales price does not exceed $300,000 for the IRS or;
(E) Seller provides Escrow Holder with a copy of an applicable waiver request and proof that the request was sent to the IRS prior to the close of escrow, in which case Escrow Holder is to retain said withholding funds, pending IRS notification. Upon receipt  of IRS waiver response, Escrow Holder shall remit the amount  as requested and refund the balance, if any, to the Seller;
**CALIFORNIA STATE  REQUIREMENTS:**  In accordance  with Section  18662, of the California Revenue  and Taxation Code, the Buyer may be required to withhold an amount equal to 3-1/3 percent of the sales price or an

(CONTINUED)

Seller's Initials:  _____/_____                          Buyer's Initials:  _____/_____

Case 2:19-bk-17539-NB    Doc 62    Filed 02/24/23    Entered 02/24/23 08:23:57    Desc
Date:  January 20, 2023         Main Document       Page 13 of 26         Escrow No.: 555564-M3

Page 7 of 10:  Additional instructions made a  part of previous pages as fully incorporated therein.

amount that is specified in a written certificate executed by the transferor in the case of a disposition of California real property interest by either:

1. A seller  who is an individual,  trust or estate  or when the disbursement instructions authorize  the proceeds to be sent to a financial intermediary of the seller, OR
2. A corporate seller that has no permanent place of business in California immediately after the transfer of title to the California real property.

The buyer may become subject to penalty for failure to withhold an amount equal to the greater of 10 percent of the amount required to be withheld or $500.

However, notwithstanding any other provision included the California statutes referenced above, no Buyer will be required to withhold any amount or be subject to penalty for failure to withhold if:

1. The sales price of the California real property conveyed does not exceed $100,000.00, OR
2. The seller executes a written certificate,  under the penalty of perjury,  certifying that the seller is a corporation with a permanent place of business in California, OR
3. The seller, who is an individual, trust, estate or a corporation without a permanent place of business in California executes a written certificate, under the penalty of perjury, of any of the following:
   A. The California real property being conveyed is the seller's or decedent's principal residence, within the meaning of Section 121 of the Internal Revenue Code,
   B. The last use of the property being conveyed was use by the transferor as the transferor's principal residence within the meaning of Section 121 of the Internal Revenue Code.
   C. The California real property being conveyed is or will be exchanged for property of like kind, within the meaning of Section 1031 of the Internal Revenue Code, but only to the extent of the amount of gain not required to be recognized for California income tax purposes under Section 1031 of the Internal Revenue Code.
   D. The California  real property has been compulsorily  or involuntarily converted,  within  the meaning of related in service  or use so as to be eligible  for no recognition  of gain for California income tax purposes under Section 1033 of the Internal Revenue Code.
   E. The California  real property transaction  will result  in a loss or net gain not required  to be recognized for California income tax purposes.

The seller  is subject  to penalty for knowingly  filing a fraudulent certificate  for the purpose of avoiding  the withholding requirement.

Any funds which are withheld shall be forwarded with the necessary forms to the IRS and/or FTB. In addition to the withholding funds, Escrow Holder will hold from  Seller's proceeds funds to cover overnight delivery fees (if necessary) to the IRS and/or FTB and the sum on $45, which  is to be paid to Escrow Holder upon delivery of funds and forms to the FTB.

**18. 1099 REPORTING DISCLOSURE:** Under the Tax Reform Act of 1986, Escrow Holder is required to report the gross proceeds of this transaction to the Internal Revenue Service (IRS). The Seller is required by law to furnish a correct taxpayer identification number or social security number to Escrow Holder and Seller may be subject to civil or criminal penalties for failure to do so. If there is more than one Seller, an allocation of the gross proceeds from this transaction must be received  by Escrow Holder prior to the close of escrow.  If Escrow Holder fails to receive a complete allocation or no allocation as to any Seller, Escrow Holder must report the entire unallocated gross proceeds to that particular Seller. If conflicting allocations are received, Escrow Holder must report the entire unallocated gross proceeds for each Seller. Sellers who are married on the closing date and who hold title to the subject property as tenants in common, joint tenants or community property  are treated for reporting purposes by the IRS as a single Seller. Each Seller must provide a permanent address to which Escrow Holder can mail IRS Form 1099 following the close of escrow.

**19. DESTRUCTION OF DOCUMENTS:** Escrow Holder is authorized to destroy or otherwise dispose of any and all documents, papers, Escrow Instructions, correspondence and records or other material constituting or pertaining to this escrow at any time after five years from the date of (A) the close of escrow, or (B) cancellation of escrow, which shall be without liability or notice to the parties.

**20. ACTION AGAINST ESCROW HOLDER:**  No action shall lie against Escrow Holder and you shall be held harmless and completely and fully indemnified, for any claim, loss, liability or alleged cause of action of any kind or nature whatsoever, however caused or incurred under this escrow or in connection with the handling or processing of this escrow, except for gross negligence or willful misconduct.

**21. CONFLICTING DEMANDS.**  If conflicting demands  are made  upon Escrow Holder or  notice is served  upon Escrow Holder of any controversy or legal action between the parties or third person(s) in connection with this escrow, Escrow Holder shall not be required to determine the same or take any action, but shall have the absolute right to withhold and stop all further proceedings  in and performance  of this escrow without liability until  a mutual writing evidencing resolution of the controversy or Order of a Court of competent jurisdiction, in form satisfactory to Escrow Holder is deposited into Escrow. You may also, at your sole discretion, bring an action in interpleader or declaratory relief, and are instructed and authorized to deposit any documents or funds with the Court pursuant to any such action, less your escrow fees and costs incurred to date.

**22. THIRD PARTY CLAIMS:** The parties, jointly and severally, indemnify and hold you harmless against third party claims for any loss, damages, claims, attorneys' fees and related costs and expenses.

**23. ATTORNEYS' FEES/LEGAL COSTS.**    IF ANY LEGAL ACTION OR OTHER PROCEEDING, INCLUDING MEDIATION OR ATTENDANCE AT ARBITRATION PROCEEDINGS INVOLVING THE PARTIES AND/OR OTHER PERSONS OR ENTITIES,  ARE BROUGHT  FOR THE ENFORCEMENT  OR INTERPRETATION  OF THESE ESCROW INSTRUCTIONS,  OR IF YOU ARE REQUIRED  TO RESPOND  TO ANY LEGAL SUMMONS  OR PROCEEDING, OR IF ANY ACTION INTERPLEADER OR DECLARATORY RELIEF IS BROUGHT BY OR AGAINST

(CONTINUED)

Date:  January 20, 2023                                                      Escrow No.:  555564-M3

Page  8 of 10:  Additional instructions made a  part of previous pages as fully incorporated therein.

YOU, THE PARTIES, JOINTLY AND SEVERALLY, SHALL PAY ALL COSTS, EXPENSES AND/OR ATTORNEYS' FEES EXPENDED  OR INCURRED  BY ESCROW HOLDER INCLUDING,  BUT NOT LIMITED  TO, A FEE FOR ESCROW SERVICES RENDERED,  EXPENSES  TO THE LAWSUIT,  COSTS  TO APPEAR  AT MEDIATION  OR ARBITRATION PROCEEDINGS, EXPENSES  ON APPEAL  OF ANY  JUDGMENT  AWARDED  TO IT AND  IN THE COLLECTION  OF ANY JUDGMENT  ENTERED  FOR ESCROW  HOLDER ["ESCROW  HOLDER'S COSTS"]. SHOULD ESCROW HOLDER DISBURSE MORE FUNDS TO OR FOR THE BENEFIT OF ANY PARTY THAN SUCH PARTY IS ENTITLES TO RECEIVE OR THE ESCROW HAS  A SHORTAGE TO OR FOR THE BENEFIT OF ANY PARTY, THE RECEIVING OR BENEFITTING PARTY SHALL REPAY ESCROW HOLDER THE AMOUNT OF THE OVERPAYMENT OR SHORTAGE UPON DEMAND, AFTER WHICH INTEREST SHALL ACCRUE  AT 10% PER ANNUM  ON  THE SUM  THEN DUE.   THE ESCROW  HOLDER'S COSTS  SHALL BE PAID  FROM  THE RESPONSIBLE PARTY'S FUNDS HELD BY ESCROW HOLDER BEFORE ANY OTHER DISBURSEMENTS ARE MADE.  A LIEN IS HEREBY CREATED  IN ESCROW  HOLDER'S FAVOR  TO COVER  ALL  SUCH ESCROW HOLDER'S COSTS.   WE AGREE TO SAVE YOU HARMLESS  AS ESCROW HOLDER UNDER THIS ESCROW FROM ALL ESCROW  HOLDER'S COSTS INCURRED BY REASON OF ANY ACTION, LEGAL OR OTHERWISE, WHICH MAY ARISE, DIRECTLY  OR INDIRECTLY,  OUT  OF  THIS ESCROW  WHETHER  BEFORE  OR AFTER CLOSING, CANCELLATION   OR OTHERWISE,  NOTWITHSTANDING   ANY  OTHER  PROVISION  OF  THIS ESCROW.

24. **DISCLOSURES:** You are not to be concerned with giving any disclosures required by federal or state law, except as may be required of you under such laws, including, but not limited to the Real Estate Settlement Procedures Act, Regulation Z, Truth-In-Lending, Property Zone Disclosures, condition of subject property or other warnings or any other warranties, expressed or implied**.**

25. **SUBDIVISION MAP ACT:**  The parties  are satisfied  that the subject property covered by this escrow  is not in violation of the Subdivision Map Act or any law regulating land division, zoning ordinances or building restrictions, or requirements, which may affect the land or improvements**.**  You are relieved  of all responsibility and liability  in connection with such laws, ordinances, restrictions,  or regulations  past, present, and future,  and are not to be concerned with any of their enforcement.

26. **ENVIRONMENTAL REVIEW:** The parties, jointly and severally, release Escrow Holder from any and all liability of any kind  or nature and indemnify Escrow Holder from  any loss, damages, claims, judgments  or costs  of any kind resulting from  or related  to the release  or discharge  of hazardous  or toxic  wastes on subject property,  whether  it occurred in the past or present,  or may occur in the future, which  is in violation of law , in excess of any state  or federal standards, permit requirements  and disclosure Requirements existing  at this time or which may exist  at a future time. The parties represent that they made their own assessment of the condition of subject property and have not relied on any of your representation in making the assessments. The parties  are advised to seek independent legal and technical environmental expert advice in assessing the risks associated with potential hazardous or toxic wastes**.**

27. **CONDITION OF PROPERTY:** Escrow Holder shall make no physical inspection of the real property or personal property described in any instrument deposited in, or which is the subject of this escrow. Escrow Holder makes no representations or warranties concerning any such real property or personal property and is not to be concerned with or liable  for the condition of real property  or personal property. Unless otherwise directed  in writing  by the parties hereto, Escrow Holder shall conduct no lien or title search regarding the sale or transfer of any personal property through this escrow**.** Should any party request a lien or title search of personal property, the party requesting same shall deliver separate  and specific written  Escrow Instructions  to you along with an agreement  to pay additional escrow fees for same.

28. **NO DUTIES TO DISCLOSE:** The parties agree that Escrow Holder has only  the responsibilities  of an Escrow Holder and there are no other legal relationships established in the terms and conditions of the escrow instructions. In connection with this escrow (A) Escrow Holder shall have no duty or responsibility of notifying any of the parties to this escrow of any sale, resale, loan, exchange or other transaction involving any of the subject real property or personal property; (B) Escrow Holder shall have  no responsibility or duty to disclose any benefit, including, but not limited to financial gain, realized by any person, corporation or firm involving the subject real property or personal property; and (C) Escrow Holder shall have  no responsibility or duty to disclose any profit realized by any person, corporation or firm, including, but not limited to any real estate broker(s), any real estate sales agent(s) and/or any party to any other escrow in connection therewith, although such other transaction may be handled by Escrow Holder in this escrow or in another escrow transaction. If, however, Escrow Holder is instructed in writing by any party, lender or other entitled person to disclose any sale, resale, loan, exchange to other transaction involving the subject real property or personal property or any profit realized by any party to this escrow, Escrow Holder shall do so without incurring any liability.

29. **LIEN HOLDER STATEMENTS DEPOSITED INTO ESCROW:** Escrow Holder is not responsible for the contents or accuracy of any beneficiary demand and/or beneficiary statement delivered to Escrow Holder by the existing lien holder. Escrow Holder is not required to submit  any such beneficiary statement and/or beneficiary demand to any party for an approval before  the close of escrow. Should  any party desire to pre-approve  any such beneficiary statement and/or beneficiary demand,  the party requesting same shall deliver separate  the specific written Escrow Instructions to Escrow Holder.

30. **LOAN DOCUMENTS**: Escrow Holder is not responsible nor concerned with the terms of any new loan(s) or the contents of any loan documents obtained by any party in connection with this escrow except to order such loan documents into the escrow file, transmit the loan documents to the Buyer or Borrower for execution and transmit the executed loan documents to Lender**.** Buyer (Borrower) acknowledges that a sub-agent, including, but not limited to, a notary public or document sign-up service, may be required to temporarily take possession of the loan documents and various escrow documents to facilitate such delivery,  and you are authorized to make arrangements  as you deem

(CONTINUED)

Seller's Initials:  _____/_____                                            Buyer's Initials:  _____/_____

Page 9 of 10:  Additional instructions made a part of previous pages as fully incorporated therein.

necessary without incurring liability. The parties understand and agree that you are neither involved nor concerned with the approval and/or processing of any loan or the contents and effect of loan documents prepared by a Lender. You shall not be responsible nor are you to be concerned with any question of usury in any loan or encumbrance, whether new or of record, which may arise during the processing of this escrow. You are not responsible for any portion of the Lender's instructions which requires their performance or obligation or duties exceeding those imposed by California statutory authority  or which requires  Escrow Holder to assume liability  for the Lender's regulatory responsibilities.

31**. RESIGNATION OF ESCROW HOLDER AND TERMINATION OF ESCROW AGENCY:** Escrow Holder, as its sole and absolute discretion, may withdraw from escrow at any time by providing five days written notice to parties and tendering all documents and funds held in escrow to the parties depositing same, Parties hold any and all of its officers, employees  and agents  fully and completely  harmless from same.  Your Escrow Holder agency shall terminate six months following  the date last set for close of escrow and shall be subject to earlier termination by receipt of mutually executed Cancellation Instructions or by resignation by Escrow Holder. If this escrow has closed or cancelled within the aforementioned six-month period, you shall have not further obligations as Escrow Holder except to disburse funds and documents pursuant to mutually executed Cancellation Instructions, to interplead, to resign as Escrow Holder at Escrow Holder's sole option, or otherwise dispose of funds and documents in accordance with a validly served Order from a Court of competent jurisdiction addressed to and containing specific instruction to Escrow Holder**.**

32. **LEGAL AND FINANCIAL COUNSEL:**    The parties acknowledge  and understand  that Escrow Holder  is not authorized to nor does it practice law or give financial advice.  The parties are advised to seek independent legal and financial counsel and advice concerning  the effect of these Escrow Instructions.  The parties acknowledge that no representations are made by Escrow Holder about the legal sufficiency, legal and/or tax consequences, or financial effects of this escrow.

33. **ERRORS OR OMISSIONS:**  In the event Escrow Holder disburses more funds than are properly due to you or it disburses funds for the benefit  of any party other  than the one who is entitled  to receive  said funds, whether by omission or by error of calculation, the party in this escrow who received benefit from  said disbursement hereby agrees to repay and/or reimburse  Escrow Holder the amount  of overpayment immediately  upon demand.  If repayment and/or reimbursement is not made, interest in the amount of 10% per annum shall commence on the sixth day after such written demand is made.  If said party refuses or neglects to pay said funds and interest due thereon to Escrow Holder, legal proceedings  to collect said funds with accrued interest will immediately ensue.  The receiving party agrees to pay all charges, court costs, and attorneys' fees that may be incurred.  Escrow Holder shall not be liable for any acts of omissions done in good faith nor for any claims, demands, losses or damages made or suffered by any party to this escrow by omission  or error in calculation.  All parties, jointly  and severally, promise  to pay promptly on demand, any cost and/or charge which should have been paid at the close of escrow.

34**. GENDER REFERENCES:** In these Escrow Instructions, wherever the context so requires, the masculine gender includes the feminine and/or neuter and the singular number includes the plural.

35**. ARBITRATION:** The parties  to this escrow agree  to submit  all disputes relation  to or actions brought against Escrow Holder  whether contract,  tort or otherwise,  to Mediation  prior to submitting  such claim to arbitration  or litigation.  However,  in the event Escrow Holder elects,  at its sole option,  to bring an Interpleader or Small Claims action or elects to resign its capacity as Escrow Holder, this Mediation provision shall not apply to such action.

36. **SEVERABILITY: If** any provision of these Instructions is held invalid or unenforceable, the other portions of these instructions shall nevertheless continue  in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances.

37. **LEGAL FEES:** If any legal action or other proceeding  is brought for enforcement of these instructions, or because of an alleged dispute, breach, default,  or misrepresentation  in connection  with any of the provisions  of these Instructions, the successful or prevailing party or parties shall be entitled to recover its reasonable attorney's fees and other costs incurred in that action or proceeding or any appeal, in addition to any other relief to which they may be entitled. If litigation is instituted and dismissed before judgment, the parties agree that all costs of suit and fees shall be paid from amounts  held in escrow before disbursement  of the sums held to the parties.  In the event Escrow Holder is compelled to initiate legal action against any party to enforce any provisions of these instructions and such action is dismissed before Judgment,  the party responsible  for compelling  Escrow Holder  to initiate  legal action agrees to pay all costs associated with the action, including but not limited to, all costs of suit and attorneys' fees. These amounts will be paid from the responsible party's funds held in escrow before any other disbursements  are made. If the responsible party does not have sufficient funds on deposit, that party will deposit funds as necessary to reimburse Escrow Holder for its expenses as slated in this paragraph**.**

38. **PRIVACY NOTICE**: Escrow Holder notices the importance of protecting the confidentiality  of non-public information in our possession.  One of our highest priorities  is assuring clients  that non-public personal customer information gathered in our rendering of services will be held secure**.** We maintain physical, electronic and procedural safeguards to guard non-public personal consumer information to an external non-affiliated organization unless  we have authorization  or are required  by law. We require organizations that provide support services on our behalf  to conform to our privacy standards**.**

(CONTINUED)

Seller's Initials:  _____/_____                              Buyer's Initials:  _____/_____

Date:  January 20, 2023                                                                                     Escrow No.:  555564-M3

Page 10 of 10:  Additional instructions made a  part of previous pages as fully incorporated therein.

39. **TIME**: Time is of the essence.

40. **GOVERNING LAW:** These instructions are governed by the laws of the State of California.

41. **COOPERATION BY THE PARTIES:** The parties shall cooperate with Escrow Holder in carrying out the terms of the mutually executed Escrow Instructions as deposited, and shall cooperate with Escrow Holder in completing the escrow. The parties shall deposit into escrow, upon request, any additional funds, instruments,  documents, instructions, authorizations or other items that are necessary to enable Escrow Holder to comply with demands made on it by third parties, to secure policies of title insurance, or to otherwise carry out the terms of their instructions and close this escrow.

42. **CONSTRUCTION OF AGREEMENT**: In construing these instructions, all paragraph headings and captions are for the convenience of the parties only and shall not be considered as part hereof.

43. **DEFINITIONS.**  The definition of "Escrow Holder" and "You" includes Arbor One Escrow, Inc. and any and all of its Directors, Officers, employees, representatives and agents. "Parties" as used in  this escrow transactions includes the Buyer and Seller, collectively.

ESCROW COMPANIES  ARE  NOT AUTHORIZED  TO  GIVE  LEGAL ADVICE.    IF  YOU DESIRE  LEGAL ADVICE, CONSULT YOUR ATTORNEY BEFORE SIGNING.

EACH PARTY SIGNING THESE INSTRUCTIONS  HAS READ  THE ADDITIONAL  ESCROW CONDITIONS   AND INSTRUCTIONS CONTAINED HEREIN AND APPROVES, ACCEPTS AND AGREES TO BE BOUND THEREBY.  ALL PARTIES SIGNING THIS AGREEMENT HEREBY ACKNOWLEDGES   RECEIPT OF A COPY OF THESE INSTRUCTIONS.

I/We agree to pay FUNDS REQUIRED TO CLOSE ESCROW UPON DEMAND.

SELLER(S) ONLY:  The foregoing terms, provisions, conditions, and instructions, and those "General Provisions" contained herein are hereby approved and accepted in their entirety and concurred in by me.  I will hand you necessary documents called for on my part to cause title to be shown as above which you are authorized to deliver when you hold for my account the sum of $409,000.00 within the time as above provided, pay your escrow charges, my recording fees, charges for evidence of title as called for, whether or not this escrow is consummated, except those buyer agrees to pay.  You are hereby authorized to pay bonds, assessments, taxes, and any liens of record to show title as called for, affix documentary tax on deed as required.

**SELLERS:**                                              **BUYERS:**

_____        _____
Florenzia Vineyard                                     Talon Stradley

                                                               _____
                                                               Rhiannon White

**Exhibit C – Estimated Closing Statement**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                                                                    **F 3015-1.16.MOTION.SELL.RP**



8667 Haven Avenue, Ste. 100  Rancho Cucamonga, CA 91730
Phone:  (909) 303-2820  Fax:  (909) 303-2802

**SELLER'S ESTIMATED SETTLEMENT STATEMENT**

**PROPERTY:**  3345 Santa Fe Avenue, #100
Long Beach, CA 90810

**DATE:**  January 25, 2023

**CLOSING DATE:**  February 21, 2023
**ESCROW NO.:**  555564-M3

**SELLER:**  Florenzia Vineyard

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 409,000.00 |
| **PAYOFF CHARGES - Rushmore Loan Management Services [Total Payoff $167,262.15]** | | |
| Principal Balance | 167,262.15 | |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes at $1,437.77/semi-annually from 02/21/2023 to 07/01/2023 | | 1,038.39 |
| Seller Credit Towards Closing Costs | 10,000.00 | |
| **COMMISSION CHARGES** | | |
| Realty Masters & Associates | 10,225.00 | |
| eXp Realty of California, Inc | 10,225.00 | |
| **OTHER DEBITS/CREDITS** | | |
| MyNHD, Inc. for Natural Hazard Disclosure Report | 74.95 | |
| Estimate - First American Home Warranty for Home Warranty Policy | 550.00 | |
| **TITLE/TAXES/RECORDING CHARGES - Lawyers Title Company** | | |
| Title - Owner's Title Insurance | 1,552.00 | |
| Title - Sub Escrow Fee | 62.50 | |
| Title - Wire Fee | 30.00 | |
| SB2 Recording Fees | 200.00 | |
| Transfer Tax - County to Los Angeles County | 449.90 | |
| Property Taxes 2nd Half 2022-23 to Los Angeles County Tax Collector | 1,437.77 | |
| **ESCROW CHARGES - Arbor One Escrow, Inc.** | | |
| Title - Escrow Fee | 1,701.55 | |
| Title - Overnight Fee | 112.50 | |
| Title - Document Prep | 295.00 | |
| Title - Wire In/Out Fee | 35.00 | |
| Title - FTB Processing Fee | 45.00 | |
| Title - Archive Fee | 147.10 | |
| **Net Proceeds** | 205,632.97 | |
| **TOTAL** | $  410,038.39 | $  410,038.39 |

**THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE**

_____
Florenzia Vineyard

**Exhibit D – Schedules I and J of the bankruptcy petition**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Exhibit C – Estimated Closing Statement**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                                    **F 3015-1.16.MOTION.SELL.RP**



8667 Haven Avenue, Ste. 100  Rancho Cucamonga, CA 91730
Phone: (909) 303-2820  Fax: (909) 303-2802

### SELLER'S ESTIMATED SETTLEMENT STATEMENT

| | | | |
|---|---|---|---|
| **PROPERTY:** | 3345 Santa Fe Avenue, #100<br>Long Beach, CA 90810 | **DATE:** | January 25, 2023 |
| | | **CLOSING DATE:** | February 21, 2023 |
| **SELLER:** | Florenzia Vineyard | **ESCROW NO.:** | 555564-M3 |

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 409,000.00 |
| **PAYOFF CHARGES - Rushmore Loan Management Services** | | |
| **[Total Payoff $167,262.15]** | | |
| Principal Balance | 167,262.15 | |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes at $1,437.77/semi-annually from 02/21/2023 to 07/01/2023 | | 1,038.39 |
| Seller Credit Towards Closing Costs | 10,000.00 | |
| **COMMISSION CHARGES** | | |
| Realty Masters & Associates | 10,225.00 | |
| eXp Realty of California, Inc | 10,225.00 | |
| **OTHER DEBITS/CREDITS** | | |
| MyNHD, Inc. for Natural Hazard Disclosure Report | 74.95 | |
| Estimate - First American Home Warranty for Home Warranty Policy | 550.00 | |
| **TITLE/TAXES/RECORDING CHARGES - Lawyers Title Company** | | |
| Title - Owner's Title Insurance | 1,552.00 | |
| Title - Sub Escrow Fee | 62.50 | |
| Title - Wire Fee | 30.00 | |
| SB2 Recording Fees | 200.00 | |
| Transfer Tax - County to Los Angeles County | 449.90 | |
| Property Taxes 2nd Half 2022-23 to Los Angeles County Tax Collector | 1,437.77 | |
| **ESCROW CHARGES - Arbor One Escrow, Inc.** | | |
| Title - Escrow Fee | 1,701.55 | |
| Title - Overnight Fee | 112.50 | |
| Title - Document Prep | 295.00 | |
| Title - Wire In/Out Fee | 35.00 | |
| Title - FTB Processing Fee | 45.00 | |
| Title - Archive Fee | 147.10 | |
| **Net Proceeds** | 205,632.97 | |
| **TOTAL** | $   410,038.39 | $   410,038.39 |

**THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE**

_____
Florenzia Vineyard

**Exhibit D – Schedules I and J of the bankruptcy petition**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                                                 **F 3015-1.16.MOTION.SELL.RP**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Florenzia Vineyard** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (If known) | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

Official Form 106I

# Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Describe Employment

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| 1. | **Fill in your employment information.** | | |
| | If you have more than one job, attach a separate page with information about additional employers. | **Employment status** | ☐ Employed ☐ Not employed |
| | | **Employment status** — ■ Employed ☐ Not employed | |
| | Include part-time, seasonal, or self-employed work. | **Occupation** — Medical Assistant | |
| | | **Employer's name** — SoCal Permanente | |
| | Occupation may include student or homemaker, if it applies. | **Employer's address** — 6670 Alton Parkway Irvine, CA 92618 | |
| | | **How long employed there?** — 16 years | |

## Part 2: Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 5,382.00 | $ N/A |
| 3. | **Estimate and list monthly overtime pay.** | 3. | +$ 0.00 | +$ N/A |
| 4. | **Calculate gross Income.** Add line 2 + line 3. | 4. | $ 5,382.00 | $ N/A |

Debtor 1    **Florenzia Vineyard**                                          Case number (*if known*)

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| **Copy line 4 here** | 4. | $       5,382.00 | $       N/A |

5. **List all payroll deductions:**

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 5a. **Tax, Medicare, and Social Security deductions** | 5a. | $       1,083.33 | $       N/A |
| 5b. **Mandatory contributions for retirement plans** | 5b. | $       0.00 | $       N/A |
| 5c. **Voluntary contributions for retirement plans** | 5c. | $       0.00 | $       N/A |
| 5d. **Required repayments of retirement fund loans** | 5d. | $       242.67 | $       N/A |
| 5e. **Insurance** | 5e. | $       0.00 | $       N/A |
| 5f. **Domestic support obligations** | 5f. | $       0.00 | $       N/A |
| 5g. **Union dues** | 5g. | $       104.00 | $       N/A |
| 5h. **Other deductions.** Specify: | 5h.+ | $       0.00 + | $       N/A |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.    6.    $       1,430.00    $       N/A

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.    7.    $       3,952.00    $       N/A

8. **List all other income regularly received:**

| 8a. **Net income from rental property and from operating a business, profession, or farm**<br>Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $       0.00 | $       N/A |
|---|---|---|---|
| 8b. **Interest and dividends** | 8b. | $       0.00 | $       N/A |
| 8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive**<br>Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $       0.00 | $       N/A |
| 8d. **Unemployment compensation** | 8d. | $       0.00 | $       N/A |
| 8e. **Social Security** | 8e. | $       0.00 | $       N/A |
| 8f. **Other government assistance that you regularly receive**<br>Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.<br>Specify: | 8f. | $       0.00 | $       N/A |
| 8g. **Pension or retirement income** | 8g. | $       0.00 | $       N/A |
| 8h. **Other monthly income.** Specify:    Contribution income | 8h.+ | $       500.00 + | $       N/A |

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.    9.    $       500.00    $       N/A

10. **Calculate monthly income.** Add line 7 + line 9.    10.    $       4,452.00    +    $       N/A    =    $       4,452.00
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify:    11.    +$       0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies    12.    $       4,452.00

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
    ■ No.
    ☐ Yes. Explain:    **The Debtor has tax liability for 2018 and needs to adjust her withholdings.  The figures on Schedule I are estimated with future withholdings and not current pay data.**

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Florenzia Vineyard** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (If known) | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J
## Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Your Household

1. **Is this a joint case?**

   ■ No. Go to line 2.

   ☐ Yes. **Does Debtor 2 live in a separate household?**

       ☐ No

       ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?** ■ No

   Do not list Debtor 1 and Debtor 2.

   ☐ Yes. Fill out this information for each dependent..............

   Do not state the dependents names.

   | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
   |---|---|---|
   | _____ | _____ | ☐ No ☐ Yes |
   | _____ | _____ | ☐ No ☐ Yes |
   | _____ | _____ | ☐ No ☐ Yes |
   | _____ | _____ | ☐ No ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**

   ■ No

   ☐ Yes

### Part 2: Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | Your expenses |
|---|---|---|
| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $ 1,328.00 |
| | **If not included in line 4:** | |
| 4a. | Real estate taxes | 4a. $ 0.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ 0.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ 50.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $ 255.00 |
| 5. | **Additional mortgage payments for your residence,** such as home equity loans | 5. $ 60.00 |

Debtor 1    **Florenzia Vineyard**    Case number (if known)

| | | | |
|---|---|---|---|
| 6. | **Utilities:** | | |
| | 6a. Electricity, heat, natural gas | 6a. $ | 180.00 |
| | 6b. Water, sewer, garbage collection | 6b. $ | 72.00 |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | 200.00 |
| | 6d. Other. Specify: | 6d. $ | 0.00 |
| 7. | **Food and housekeeping supplies** | 7. $ | 450.00 |
| 8. | **Childcare and children's education costs** | 8. $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. $ | 35.00 |
| 10. | **Personal care products and services** | 10. $ | 35.00 |
| 11. | **Medical and dental expenses** | 11. $ | 65.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. $ | 475.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. $ | 30.00 |
| 14. | **Charitable contributions and religious donations** | 14. $ | 0.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| | 15a. Life insurance | 15a. $ | 0.00 |
| | 15b. Health insurance | 15b. $ | 0.00 |
| | 15c. Vehicle insurance | 15c. $ | 157.00 |
| | 15d. Other insurance. Specify: | 15d. $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. $ | 0.00 |
| 17. | **Installment or lease payments:** | | |
| | 17a. Car payments for Vehicle 1 | 17a. $ | 460.00 |
| | 17b. Car payments for Vehicle 2 | 17b. $ | 0.00 |
| | 17c. Other. Specify: | 17c. $ | 0.00 |
| | 17d. Other. Specify: | 17d. $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. $ | 0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | |
| | 20a. Mortgages on other property | 20a. $ | 0.00 |
| | 20b. Real estate taxes | 20b. $ | 0.00 |
| | 20c. Property, homeowner's, or renter's insurance | 20c. $ | 0.00 |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. $ | 0.00 |
| | 20e. Homeowner's association or condominium dues | 20e. $ | 0.00 |
| 21. | **Other:** Specify: | 21. +$ | 0.00 |

| | | | |
|---|---|---|---|
| 22. | **Calculate your monthly expenses** | | |
| | 22a. Add lines 4 through 21. | $ | 3,852.00 |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| | 22c. Add line 22a and 22b.  The result is your monthly expenses. | $ | 3,852.00 |
| 23. | **Calculate your monthly net income.** | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | 4,452.00 |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | 3,852.00 |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. $ | 600.00 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.

☐ Yes.    Explain here: **Debtor's car payment is a payment she pays directly but is not liable on; Debtor's ex-spouse is liable on the payment but did it as a favor for debtor.**